May it please the Court, Michael Sattras on behalf of Chester Johnson, and I'll reserve one minute for rebuttal, if I may. I'll just keep track of your own time. All right, thank you. There's been a lot of controversy and litigation surrounding the so-called no-parole policy that the executive in California has adopted. You may hear more about that before your session is over this morning. But this case brings us back to a parole policy that was less than zero. And I say that because at the time the parole rescission proceedings were initiated here, which was in 1991, the new regime had set in where the executive was not only not granting parole to life prisoners generally, but were going back to parole grants that it had already granted and that were still unexecuted and saying, oh, we made a mistake. We didn't adequately consider the gravity of the offense when we found this prisoner suitable for parole and established a parole date for him. And on that basis, we have cause to rescind that grant. When you say unexecuted, what does that mean? Well, a prisoner, it's a two-step process in California after the law in 78 came in that advocated early setting of a parole date. But it would be prospective. And so you have to serve a certain uniform term just for punishment purposes. So that's what happened with Mr. Johnson. He got his parole date in 1981. He'd been eligible for parole for some several years. He's serving a seven-to-life sentence, minimum sentence of seven years. And the board said, we find that you are suitable for parole or entitled to a parole date that you'll do well once you are released. But in terms of setting a date, they aggravated his crime for various reasons. They gave him more than the usual amount of time according to their guidelines for the second murder. And so it was a date way in the future. So that's an unexecuted date. So he hasn't yet reached the date where he was originally set for eligibility for parole. Right. And then they say, no, we were wrong. Yes. Okay. So 10 years ago he's never gotten out. No. I mean, that's the elephant in the room in this case is the State courts found that this entire proceeding, 10 years after, on the eve of his release date, at least the State court did that initially heard it, was fundamentally unfair, violation of due process, ordered him released pursuant to the parole grant, and he spends 13 months on parole. I understand. But for purposes of the unexecuted, the definition of unexecuted, he's not out yet. Is that right? Well, I suppose. I'm just trying to get the technical understanding. Yes. Yes. This is a rescission action as opposed to a parole revocation action. But one of his complaints, of course, is that he was unceremoniously returned to prison for these rescission proceedings when, in fact, he'd already spent 13 years on parole. He was entitled to, after a year review for discharge from parole, which he obtained. And then the parole agent, and this is excerpts of Record 31, found that he had been basically, you know, your model prisoner, doing very well and so forth. But given the seriousness of the offense, I think we should extend his parole term another year. It was actually a three-year maximum term. Fair enough. And then what happens is three weeks later, he's just returned to prison for a parole rescission hearing. Now, that was in November of 1992. He does not get a fair parole rescission hearing, according to the State, until 1995. And it's that hearing, the fairness of that hearing, and determination to rescind that parole grant that is the subject of this appeal. And so what the heat, Mr. Johnson found himself in the same vise or vice that the life prisoner did in the McQuillian case, which controls here. It was the same set of facts, an unexecuted parole date where the parole board said we made a mistake and didn't adequately consider the seriousness of the offense. And taking the nod from the State court framework that it developed to ensure that when the board says this, it's they're not just acting arbitrarily and capriciously for personal or political reasons. There has to be more than merely a disagreement in judgment. What this court said is the proper focus is on the findings and conclusions that were central to the original panel's ultimate decision to grant parole. And only when those findings and conclusions can't be reconciled with the evidence, or if the granting panel misstated facts or explicitly declined to consider information to the particular, to the factors, will there be some evidence to justify rescission. And it's very clear that under that construct, where, as the Court said, you presume the panel considered the evidence before it, that there was no basis for the rescission panel to conclude that the granting panel had inadequately considered the seriousness of the offense. If you look at the decision of the granting panel, they go on for pages about the commitment offense. And they go on in their specific decision to say that although the commitment offenses were senseless acts and the panel is aware of the seriousness, when viewed in relationship, and then they list a number of the other factors of suitability, the prisoner's apparent maturation, expressions of remorse, overall positive institutional adjustment, development of the relationship. They may have stated more reasons, but isn't the issue before us whether there's some evidence to support the rescission? The rescission panel's determination that the granting panel did not adequately consider the gravity of the offense, where you see here there's pages about the offense as a prologue to its decision, and then there's a specific explanation that says, yes, we've considered it, but we find it's outweighed by these other factors. And so a rescission panel cannot come in and say we are just putting a different value on your balancing act. We reach a different conclusion. Based on the same facts, based on the same considerations, we just changed our mind. That's what McQuillian is all about, that you cannot do that. That's the epitome of arbitrariness and capriciousness, a complete flip-flop. In this case, you went through the State process and lost on habeas. Right. So we not only have before us whether there was good cause to make that change, but whether or not the State was unreasonably concluded. So we have another step up. Correct. An added burden that you have. And you're arguing that it was unreasonable for the State court to conclude that there was good cause. Yes. It was unreasonable for the State court to conclude that, yeah, the Board reasonably found good cause. Because to find good cause, there has to be some evidence that, in fact, the Board did not consider the facts of the case, because there's such a discrepancy between the facts and its ultimate conclusion, or because they specifically said, no, we don't think we can consider these facts because for whatever reason. And so you have an unreasonable determination, because clearly the only way to read this record is that the rescission panel had no evidence at all to support its findings. None at all. Excuse me, Your Honor? None at all. No. It was on this issue of whether the Board inadequately considered the gravity of the offense. The only difference between this case and McQuillian is we have this added issue of disciplinaries, one disciplinary in particular, that Mr. Johnson committed after he was returned to prison, after the Board gave him an inadequate, unfair parole rescission hearing. So then it's 1995, and then by this time, he has what's one rules violation, serious rules violation report. We had four. We have four. Three of them. But one of them was serious. Yes. Three of them are what's called administrative. Under the Board's rules, they fall. Swipes a can of pop out of the. Out of the garbage can. But the one. Yes. The one that was there could be considered serious. And, in fact, it was technically, you know, classified a serious rules violation under the Board rules. It was the least serious. It was a Division F offense, which the disciplinary hearing officer listed. That's just marginally serious. It goes all the way up to Division A. You've used your time. Already? Yes. All right. We will give you 30 seconds if you want to say something. Thank you. May it please the Court. Anya Bensaka for Respondent Affiliate, the Warden. The District Court's judgment here should be affirmed because there is no clearly established Supreme Court law governing what processes do in the parole rescission context. Therefore, the state court decisions denying habeas relief cannot be contrary to any clearly established Supreme Court law within the meaning of the Anti-Terrorism and Effective Death Penalty Act. Under that act, the first question for the reviewing court is whether there is any clearly established Supreme Court law on the issue at hand. Here, there is not. The only time the Supreme Court has addressed parole rescission was in the context of the Oregon parole rescission statute. It found no federally protected liberty interest, so it did not go on to hold what process would be due in the rescission context. Therefore, this Court's inquiry should end because the state court decision denying habeas relief is not contrary to any clearly established Supreme Court law. Johnson argues that this Court's decision in McQuillian controls this case, but as this Court has held in cases like Crater, circuit court law is not dispositive within the meaning of the Anti-Terrorism and Effective Death Penalty Act. Particularly in Duhaime, this Court found that if the circuit court decision makes an extension of Supreme Court law, it's announcing a new rule of law that law is not clearly established. And that's what this Court did in McQuillian. It took the some evidence standard announced by the Supreme Court in Hill from the prison disciplinary context and extended it to the parole rescission context. Thus, there remains no clearly established Supreme Court law on the issue of parole rescission. To the extent there is any clearly established Supreme Court law in the parole context, it's found in Greenhalghs. And Greenhalghs found in the parole suitability context that notice and opportunity to be heard and a statement of reasons for the decision suffice. Mr. Johnson unquestionably received those protections. There has to be some evidence, does there not? Within the context of the anti-terrorism. No, I know your argument about that, but setting that aside, there would have to be some evidence to support the decision. Yes. If McQuillian controls, yes, Your Honor, there would have to be some evidence to support the board's rescission decision. And the question is whether the State court unreasonably applied that some evidence standard. Clearly, our position is the State court did not, that there was some evidence to support the rescission decision here. And that some evidence would have to relate to what? What I'm thinking of is we have a recent decision just decided in the Hayward case that says that the standard that you're looking at is whether there's going to be a danger to the community. It doesn't seem like this case would be a danger to the community situation. The holding in Hayward that the question of some evidence goes to current danger is wrong for several reasons. The Hayward court adopted that standard from a line of State court decisions. And the Hayward court characterized the State court law in this case as sort of clearly established. In reality, it is anything but. The California Supreme Court has, in fact, granted review in four different cases to address the question of what does the some evidence question go to in California. Does it go to the ultimate question of current danger? Or does it go to simply reviewing the factual basis of the governor or the board's decision? To the extent that the State law is that there must be some evidence of current danger, the fact that the State might have chosen to provide that additional due process protection does not make it a federally reviewable issue, particularly within the confines of the Antiterrorism and Effective Death Penalty Act. If this court chooses to apply the some evidence standard, it should apply the some evidence standard set out in Hill, which is a very deferential, very minimal standard that only asks whether some evidence supports the decision. Here, there clearly is some evidence to support the decision. What is that evidence in your mind? I think there are two chunks of evidence. The first chunk, which is, I think, unassailable, are the four disciplinary violations. Yeah. That's pretty hard to see how that's much evidence, but maybe some. But taking something out of the garbage can and... Well, Mr. Johnson tries to minimize these offenses. And while we can look at it from the luxury of our position in the outside world and say, well, it's not a big deal to take a can of pop out of the garbage can, we can speculate as to why that was a disciplinary violation. You can look at the prison context and realize... It was classified as theft, wasn't it? I don't recall the specific classification. Yeah, it was, and theft seems very odd. What were the other things? Well, I was just going to mention that one of the reasons the prison might be concerned about someone taking an item like that is to have a resealable container in the possession of an inmate has implications down the road. It can be filled with other things. It could be used as a weapon. There are all sorts of reasons why the prison might have rules against having that. And it's not the position of the State court, let alone a Federal reviewing court, to go back and second guess why these violations were... What was the most serious of the violations? Disciplinary violations. I'm sorry, Your Honor. I'm not sure which of the four was classified as most serious. I know the only one was classified as a serious rule violation, and the others were administrative. It was the one initiating a crime sort of thing. Inciting. It's classified as. And I'm not here arguing that these are the most egregious prison violations that anyone has ever seen. And Mr. Johnson says, well, perhaps this is a reasonable reaction to the stressful situations he was put into. But it's certainly well within the Board's rights to examine how Mr. Johnson reacted to a stressful situation and to think about how that is going to translate to his behavior once he's out of prison. Certainly parolees face many challenges on the outside. And if Mr. Johnson is in a situation where he's unable to find a job, and then is he going to react to that stressful situation by so-called minor violations of his parole? It's certainly within the Board's discretion to consider those as good cause for rescission. In addition to the disciplinary violations, the Board found that the granting panel didn't adequately consider the commitment offense. And I think not so much with respect to the specific facts of the commitment offense, but with respect to Mr. Johnson's relationship to it and whether he had adequately showed remorse or empathy for the victims, that kind of thing. And those are specific considerations for the Board in evaluating parole suitability, the inmate's past and present attitude towards the crime. And to the extent that the McQuillian case follows the State Court's decision in considering what is more than a mere disagreement, Caswell specifically notes that the granting panel's failure to consider a specific issue is a proper basis for rescission. And here the granting panel did not consider Mr. Johnson's remorse or empathy regarding the crime. So to the extent that this Court is going to examine the evidence, there is some evidence in the record. I don't want to clear up one thing because it becomes important in the Hayward case. Whether the parole decision was before or after the seven years minimum he had served, my understanding was after. Whether the rescission decision? Yeah. Absolutely. Mr. Johnson had served well over seven years. I believe he entered the Department of Corrections in 1970. When the Board found him suitable for parole in 1980, it would have been ten years from 1970, so it would have been beyond the seven years, right? That's correct, Your Honor. But we would maintain that whether or not someone has served their minimum term is not relevant under the Anti-Terrorism and Effective Death Penalty Act. There's no clearly established Supreme Court law that in any way relates a parole decision to whether or not someone has served their minimum term. I guess it's relevant if we were to follow Hayward. That's right, Your Honor. Okay. In conclusion, because there's no clearly established Supreme Court law explaining what processes do in the parole rescission context, the State court denial of Johnson's habeas claim was not contrary to or an unreasonable application of clearly established Supreme Court law. Thank you. Okay. Thank you. Very briefly. Yes. Thank you. McQuillian was a case that was under Eichmann where they did make that finding of unreasonable action by the State court, and I think the same applies here. The disciplinary we have was a stupid remark that Mr. Johnson allegedly made when they couldn't get into their houses, the cell block, for almost eight or ten hours or something. According to the board, that violation shows the prisoner still has some difficulty making decisions that would keep him away from possible violent activity. There was no violence involved. It was a remark. Nobody took any steps as a result of it. So the idea that it shows he's vulnerable to stress and if he gets out, he might not be able to find a job. That's exactly what happened to him when he did get out. He couldn't find a job at first. He got a job. He did well. He was doing as well as could be. The standard for rescission is, yes, did the board make an improvident grant where it now appears, based on like this new information, that it would be an unreasonable risk to release him to the public? And the fact is he's shown by his 13 months of conforming behavior that these disciplinaries mean nothing in that determination. Thank you. The case just argued is submitted. We'll hear the next case, Boatman v. Brown.
judges: Wallace, Hug, Schroeder